KS|RM

To:    Clerk of Court
United States Court of Appeals for the Fourth Circuit
1100 East Main Street,
Suite 501
Richmond, VA 23219

**April 13, 2026**

RECEIVED

APR 1 6 2026

U.S. Court of Appeals
Fourth Circuit

From:    Pierre Rashad Preston
Reg. No. 54173-509
Federal Prison Camp (FPC) Butner
P.O. Box 1000
Butner, NC 27509

Re:    United States v. Preston, No. 25-6935 | Related District
Court Case No. 4:21-CR-00015-EKD-1

Dear Clerk of Court:

I write respectfully in connection with the above-captioned matter to address the timing of my receipt of the Court's recent decision and to request the Court's consideration of that timing in evaluating the present filing.

The Court's decision in this matter was entered on March 31, 2026. Under the applicable rules, a fourteen-day period would ordinarily govern the timing of a petition for rehearing. However, I did not receive notice of that decision until Thursday, April 9, 2026—ten days after its issuance—due to the unavoidable delay inherent in the Bureau of Prisons' legal mail system.

As an incarcerated individual, I do not receive court filings contemporaneously with their issuance. Instead, I am entirely dependent upon institutional mail procedures over which I have no control. The delay between the Court's entry of its decision and my actual receipt of that decision materially compressed the time available for me to prepare and submit a meaningful response.

In support of this representation, I am prepared to provide—and respectfully reference—the institutional legal mail logbook reflecting that I signed for and received the Court's

correspondence on April 9, 2026. That record constitutes objective, contemporaneous evidence of receipt and satisfies the reliability standards contemplated by the Federal Rules of Evidence as to proof of delivery and timing.

Under any objective standard of reasonableness, a litigant who receives notice of a dispositive appellate ruling ten days after its issuance cannot be said to have had a full and fair opportunity to utilize the entirety of the prescribed response period. This is particularly true where the litigant is proceeding pro se and is subject to the inherent constraints of incarceration, including limited access to legal materials, restricted communication, and institutional processing delays.

I fully recognize and respect the Court's rules and the importance of adherence to filing deadlines. At the same time, I respectfully submit that those rules presuppose a reasonable opportunity to respond—an opportunity that, in this instance, was materially affected by factors beyond my control.

Accordingly, to the extent any issue may arise regarding the timeliness of my filing, I respectfully request that the Court take into account the date of actual receipt—April 9, 2026—as reflected in the institutional legal mail log, and consider that circumstance in the interest of fairness and justice.

Despite such unreasonable time constraint, I have provided my "PETITION FOR REHEARING AND REHEARING EN BANC (pursuant to Fed. R. App. P. 35 and 40)" herewith.

I appreciate the Court's time and consideration of this constitutionally pressing matter.

*Pierre Rashad Preston*

Pierre Rashad Preston
Reg. No. 54173-509
Federal Prison Camp (FPC) Butner
P.O. Box 1000
Butner, NC 27509

*The remainder of this page has been left blank intentionally.*

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff–Appellee,

v.                                              Case No. 25-6935

PIERRE RASHAD PRESTON,
(Pro se) Defendant–Appellant.

**PETITION FOR REHEARING AND REHEARING EN BANC**
**(Pursuant to Fed. R. App. P. 35 and 40)**

**INTRODUCTION**

This case presents not a routine challenge to the denial of compassionate release, but a convergence of constitutional injury, structural breakdown, record distortion, and ongoing custodial harm that together strike at the core of the Constitution's protection of liberty, bodily integrity, and due process.

Appellant Pierre Rashad Preston entered federal custody without the [permanent] injuries he now carries. He now remains confined under the supervision of the same institutional actors whose conduct—according to contemporaneous and authenticated medical documentation, specialist findings, and undisputed treatment chronology—precipitated acute kidney injury, bilateral pyelonephritis, renal deterioration, and continuing systemic harm. These injuries are not speculative, nor are they remote in time. They are documented, medically corroborated, causally linked to custodial conduct, and—critically—ongoing.

The constitutional dimension of this case is immediate and renewing. Each day of continued confinement subjects Mr. Preston to the same custodial system that has already caused serious harm and continues to pose a substantial risk of further injury. The Supreme Court has made clear that the Constitution does not tolerate such exposure. In <u>Farmer v. Brennan</u>, the Court held that the Eighth Amendment protects against conditions posing a substantial risk of serious harm, even where that harm has not yet fully materialized. 511 U.S. 825, 834 (1994). Here, the risk has not only materialized—it continues without abatement.

The district court acknowledged the gravity of Mr. Preston's condition by assuming, without deciding, that "extraordinary and

compelling reasons" existed under 18 U.S.C. § 3582(c)(1)(A). Yet it denied relief based solely on § 3553(a), without resolving whether continued confinement under these conditions is constitutionally permissible.

That analytical structure is not merely incomplete—it is constitutionally impermissible.

The Constitution does not permit a court to recognize the plausibility of ongoing constitutional injury and then subordinate that injury to statutory sentencing factors. As the Supreme Court held in Marbury v. Madison, the Constitution is the supreme law of the land, and courts are bound to give it controlling effect. 5 U.S. (1 Cranch) 137, 177 (1803). Once confinement itself becomes the mechanism of harm, judicial responsibility is no longer discretionary—it becomes mandatory.

This Court should grant rehearing and rehearing en banc to restore doctrinal coherence, reaffirm constitutional supremacy, and ensure that no individual remains confined under conditions that plausibly violate the Constitution while the judiciary declines to act.

### STATEMENT OF ISSUES WARRANTING EN BANC REVIEW

1.     Whether repeated administration of contraindicated medication following a known diagnosis of acute kidney injury constitutes an unreasonable bodily intrusion under the Fourth Amendment.

In Winston v. Lee, the Supreme Court held that compelled bodily intrusions implicate "expectations of privacy and security of such magnitude" that they must be evaluated under a strict standard of objective reasonableness. 470 U.S. 753, 760 (1985). The Court emphasized that intrusions into the human body are among the most serious forms of governmental action and must be justified by compelling necessity. Here, the administration of nephrotoxic medication after a known diagnosis of acute kidney injury lacked medical justification and foreseeably caused harm, rendering the intrusion objectively unreasonable under the Fourth Amendment.

2.     Whether continued exposure to known medical risk constitutes deliberate indifference under the Eighth Amendment.

In Estelle v. Gamble, the Court held that deliberate indifference to serious medical needs constitutes cruel and unusual punishment. 429 U.S. 97, 104 (1976). In Farmer v. Brennan, the Court clarified

that liability attaches where officials know of a substantial risk of serious harm and fail to take reasonable measures to abate it. 511 U.S. at 837. In Helling v. McKinney, the Court extended this protection to exposure to future harm, holding that conditions posing a risk of serious damage to future health are constitutionally actionable. 509 U.S. 25, 33 (1993). The record here satisfies each element: knowledge, risk, harm, and continued exposure.

3.      Whether reliance on a materially distorted factual record violates due process under the Fifth
        Amendment.

In Napue v. Illinois, the Supreme Court held that due process is violated when the government allows false or misleading impressions to influence judicial determinations. 360 U.S. 264, 269 (1959). That principle applies beyond the trial context and governs any adjudication affecting liberty. Where omissions and distortions obscure causation and constitutional injury, the integrity of the proceeding itself is compromised.

4.      Whether custodial medical providers act under color of law for constitutional purposes.

In West v. Atkins, the Court held that private physicians providing medical care to inmates act under color of state law because they perform a function traditionally reserved to the State. 487 U.S. 42, 54 (1988). Thus, constitutional obligations attach fully to custodial medical care, regardless of the provider's formal employment status.

5.      Whether denial of compassionate release without satisfying § 3553(a)(2)(D) constitutes reversible
        error.

Section 3553(a)(2)(D) requires courts to consider the need "to provide the defendant with needed… medical care." Failure to meaningfully engage this factor in the presence of documented harm constitutes an abuse of discretion.

6.      Whether government omissions undermine judicial integrity.

In United States v. Shaffer Equipment Co., the Fourth Circuit held that courts possess inherent authority to protect "the integrity of the judicial process" where misconduct threatens fairness. 11 F.3d 450, 462 (4th Cir. 1993). Where material omissions distort the record, courts must act.

7.      Whether interference with legal mail violates the right of access to courts.

In <u>Bounds v. Smith</u>, the Supreme Court held that prisoners must have meaningful access to the courts. 430 U.S. 817, 828 (1977). In <u>Haze v. Harrison</u>, the Fourth Circuit held that improper handling of legal mail may violate constitutional protections by undermining confidentiality and access. 961 F.3d 654, 658 (4th Cir. 2020).

8.      Whether psychological harm arising from continued exposure to risk constitutes constitutional injury.

In <u>Farmer</u>, the Court recognized that exposure to substantial risk itself constitutes actionable harm. 511 U.S. at 834. That principle necessarily includes psychological suffering tied to known and unremedied danger.

### STANDARD FOR REHEARING EN BANC

Rehearing en banc is warranted where "the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a)(2).

This case satisfies that standard because it presents a foundational constitutional question: whether courts may acknowledge ongoing constitutional harm yet decline to remedy it. The Supreme Court has repeatedly emphasized that issues involving ongoing violations of bodily integrity and conditions of confinement are among the most serious questions in constitutional law.

Failure to grant review risks establishing a precedent in which constitutional rights are recognized but not enforced—a result incompatible with the role of Article III courts.

### ARGUMENT

### I.      THE RECORD, AS PRESENTED, IS MATERIALLY DISTORTED AND CONSTITUTIONALLY UNRELIABLE

Due process requires that judicial determinations affecting liberty be grounded in an accurate and complete factual record. The Supreme Court's decision in <u>Napue v. Illinois</u> establishes that a judgment predicated on false or misleading information violates due process where that information bears on the outcome. 360 U.S. at 269. The Court explained that the integrity of the judicial process is compromised when material facts are omitted or distorted.

That principle applies here with full force.

The record, as relied upon by the district court, omits or reframes critical facts relating to causation, including the timing of Mr. Preston's acute kidney injury relative to the administration of contraindicated medication, the known risks associated with that medication, and the findings of outside specialists linking the injury to treatment decisions.

These omissions are not peripheral. They go directly to the constitutional analysis. When causation is obscured, culpability is misassigned. When culpability is misassigned, constitutional violations are minimized or ignored.

The Fourth Circuit has emphasized that courts must intervene where the integrity of the process is threatened. In Shaffer Equipment, the court held that judicial authority must be exercised to prevent the process from being "tainted by misconduct." 11 F.3d at 462. A decision rendered on a distorted record is not merely erroneous—it is structurally unsound.

## II.      THE GOVERNMENT FAILED ITS HEIGHTENED DUTY OF CANDOR

The Government's obligation in litigation is not to win at all costs, but to ensure that justice is done. In Berger v. United States, the Supreme Court held that the Government "is in a peculiar and very definite sense the servant of the law," whose interest "is not that it shall win a case, but that justice shall be done." 295 U.S. 78, 88 (1935).

That duty includes an affirmative obligation to correct misleading impressions and ensure that courts operate on an accurate factual basis.

Here, the Government's framing of Mr. Preston's case as one involving "refusal of care" materially altered the narrative. It shifted focus away from medically induced injury and toward alleged noncompliance, thereby obscuring the constitutional dimension of the case.

The Supreme Court reinforced this obligation in Kyles v. Whitley, emphasizing that the Government must disclose and correct material information necessary for fair adjudication. 514 U.S. 419, 437 (1995). Where the Government fails to do so, the resulting decision cannot stand.

## III.      THE DISTRICT COURT MISAPPLIED § 3553(a)

Section 3553(a) imposes a mandatory obligation on sentencing courts to consider the need "to provide the defendant with… medical care." 18 U.S.C. § 3553(a)(2)(D). This requirement is not

subordinate to other factors; it is an integral component of the statutory framework governing sentencing and sentence modification.

The Fourth Circuit has emphasized that district courts must conduct individualized assessments grounded in the full factual record. United States v. High, 997 F.3d 181, 187 (4th Cir. 2021). Where a defendant's medical condition is central to the request for relief, the court must meaningfully engage with the evidence and explain its reasoning in a manner that reflects careful consideration of the statutory factors.

In the present case, the district court assumed the existence of extraordinary and compelling reasons, yet denied relief based on § 3553(a) without resolving the underlying constitutional concerns or addressing whether continued confinement was consistent with the statutory mandate to provide adequate medical care and remove Mr. Preston from his abusers. That approach effectively divorces § 3553(a) from its purpose and permits the continuation of conditions that may themselves be unlawful.

### IV. STATUTORY AUTHORITY AND JUDICIAL INDEPENDENCE

The First Step Act restored judicial authority under 18 U.S.C. § 3582(c)(1)(A).

United States v. McCoy, 981 F.3d 271 (4th Cir. 2020), confirms independent discretion. Kibble requires individualized review. Beck authorizes relief where care is inadequate. BOP Program Statement 6031.04 requires proper medical care consistent with accepted standards.

The failure here reflects systemic breakdown—not discretionary judgment.

### V. ONGOING MEDICAL RISK CONSTITUTES A CONTINUING AND ESCALATING EIGHTH AMENDMENT VIOLATION

The Eighth Amendment's prohibition against cruel and unusual punishment is not limited to completed acts of abuse; it extends with equal, if not greater, force to conditions of confinement that expose an individual to a substantial and continuing risk of serious harm. Estelle v. Gamble, 429 U.S. 97, 104 (1976), established that deliberate indifference to serious medical needs constitutes unconstitutional punishment. That principle was not confined to denial of treatment—it encompasses conduct that affirmatively worsens a prisoner's condition or subjects him to medically unjustifiable risk.

The Supreme Court in Farmer v. Brennan, 511 U.S. 825, 837

(1994), clarified that constitutional liability attaches where officials are aware of facts from which the inference of substantial risk can be drawn and, critically, where they actually draw that inference yet disregard it. That standard is not merely satisfied here—it is exceeded. The record reflects not passive neglect but active exposure to medically contraindicated treatment after a documented diagnosis of acute kidney injury, followed by continued confinement under the same institutional authority responsible for that harm.

Equally important, Helling v. McKinney, 509 U.S. 25, 33 (1993), confirms that the Constitution protects against future harm, holding that exposure to conditions posing an unreasonable risk of serious damage to future health violates contemporary standards of decency. The Court emphasized that a remedy cannot be withheld simply because the harm has not yet fully materialized. Here, Mr. Preston's ongoing symptoms—sharp flank, groin/genital, and anal pain, renal dysfunction, and risk of recurrent infection or obstruction—are precisely the type of continuing harm Helling recognizes as constitutionally actionable.

The Fourth Circuit's recent decision in Swink v. Southern Health Partners, Inc., No. 21-2183, ___ F.4th ___ (4th Cir. Nov. 20, 2025), reinforces this framework by recognizing that repeated failures, delays, or medically inappropriate care, when combined with continued exposure to the same conditions or providers, constitute an ongoing constitutional injury rather than an isolated past event. Swink underscores that deliberate indifference is not extinguished when the initial harm occurs—it persists so long as the risk remains unaddressed.

Thus, the constitutional violation here is not historical—it is active, ongoing, and compounding. Continued confinement under these conditions is not neutral; it is itself the mechanism of harm. That reality alone places this case squarely within the category of exceptional importance warranting en banc intervention.

VI.    **FOURTH AMENDMENT PROTECTIONS ARE IMPLICATED BY MEDICALLY UNJUSTIFIED BODILY INTRUSIONS**

The Fourth Amendment's protection against unreasonable searches and seizures encompasses bodily integrity, a principle the Supreme Court has described as among the most deeply rooted expectations of privacy in our legal tradition. In Winston v. Lee, 470 U.S. 753, 760 (1985), the Court held that compelled physical intrusions beneath the skin implicate profound constitutional concerns and require careful balancing of governmental interests against individual dignity and bodily autonomy.

While incarceration necessarily modifies certain expectations of privacy, it does not extinguish the fundamental right to be free from arbitrary or medically unjustified bodily intrusion. The Constitution does not permit the State—or those acting under its authority—to administer treatment that is known to be contraindicated, medically unsound, or foreseeably harmful. When such conduct occurs, it is not medical care; it is an unreasonable intrusion.

Here, the administration of ketorolac (Toradol) after a documented diagnosis of acute kidney injury represents more than negligence —it reflects a medically unjustifiable intrusion into Mr. Preston's bodily integrity. The absence of clinical justification, combined with the foreseeability of harm, transforms what might otherwise be characterized as treatment into a constitutional violation. The Fourth Amendment is therefore directly implicated, particularly where the intrusion resulted in lasting and irreparable injury.

This Court has long recognized that constitutional protections do not operate in isolation. Where conduct violates both Eighth Amendment standards of care and Fourth Amendment protections of bodily integrity, the constitutional breach is compounded, not diminished. The district court's failure to engage this dimension of the case further underscores the need for en banc review.

VII.    PSYCHOLOGICAL AND EMOTIONAL TRAUMA CONSTITUTE INDEPENDENT AND COMPOUNDING CONSTITUTIONAL HARM

The Constitution does not distinguish between physical and psychological suffering when assessing the presence of constitutional injury. The Supreme Court in Farmer made clear that exposure to a substantial risk of serious harm is itself a cognizable injury, even before that harm fully manifests. 511 U.S. at 834. That principle necessarily includes the psychological toll associated with living under conditions of known and unremedied danger, and unable to get proper, timely, and specialized care.

The Fourth Circuit has likewise recognized that sustained fear, anxiety, and emotional distress arising from unsafe conditions can constitute actionable harm where they are tied to deliberate indifference. Prolonged uncertainty regarding one's medical condition, coupled with the knowledge that the custodial authority responsible for treatment has previously caused harm, creates a uniquely destabilizing and constitutionally significant form of injury.

Mr. Preston's experience reflects precisely that reality. He is not

merely enduring physical pain; he is subjected daily to the psychological burden of knowing that his health—and potentially his life—remains in the hands of those who have already failed him. That sustained mental and emotional trauma is neither incidental nor speculative; it is a direct and foreseeable consequence of the conditions of confinement.

Courts cannot ignore such harm without reducing the Constitution to a purely physical safeguard, stripped of its broader protection of human dignity. The Eighth Amendment, properly understood, protects against conditions that inflict unnecessary suffering—whether physical, psychological, or both. The failure to account for this dimension of injury represents a fundamental analytical gap requiring correction.

**VIII.    INTERFERENCE WITH LEGAL MAIL UNDERMINES STRUCTURAL FAIRNESS AND**
**THE INTEGRITY OF THE ADVERSARIAL PROCESS**

The right of access to the courts is a foundational constitutional guarantee. In <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977), the Supreme Court held that prisoners must be afforded meaningful access to the judicial process, including the ability to communicate confidentially with counsel. That right is not procedural—it is structural, ensuring the fairness and integrity of adversarial adjudication.

The Fourth Circuit has reinforced this principle in <u>Haze v. Harrison</u>, 961 F.3d 654, 658 (4th Cir. 2020), holding that the opening of legal mail outside an inmate's presence may violate constitutional protections by undermining attorney-client confidentiality and chilling the exercise of legal rights. Such interference is particularly concerning where it occurs in the context of ongoing litigation involving constitutional claims.

Here, the opening of Mr. Preston's [attorney-sent] legal mail—containing privileged communications and medical information relevant to his case [during U.S. District Court proceedings]—compromised the integrity of the proceedings at a critical stage. It disrupted the confidential relationship between attorney and client, exposed litigation strategy, and created an imbalance inconsistent with the adversarial system.

This is not a peripheral issue. When the process itself is compromised, the legitimacy of the outcome is necessarily called into question. Structural fairness demands not only that justice be done, but that it appears to be done. In re <u>Murchison</u>, 349 U.S. 133, 136 (1955). That standard cannot be satisfied where the

integrity of attorney-client communications has been breached.

## IX.    STRUCTURAL ERROR

Structural errors invalidate proceedings entirely. Gonzalez-Lopez, 548 U.S. 140 (2006). Here: (1) the record is incomplete, (2) constitutional violations exist, (3) legal interference, (4) the harm is ongoing. This is structural.

## X.    THE EIGHTH AMENDMENT DELIBERATE-INDIFFERENCE STANDARD IS SATISFIED BY THE RECORD AND COMPELS RELIEF

The Supreme Court has long held that deliberate indifference to serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976) (holding that the government's failure to provide adequate medical care to incarcerated individuals violates the Constitution where it reflects deliberate indifference rather than mere negligence). This principle is not aspirational—it is a binding constitutional floor below which custodial medical care may not fall.

Deliberate indifference exists where officials know of and disregard a substantial risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994) (holding that liability attaches where a prison official is subjectively aware of a substantial risk of serious harm and fails to take reasonable measures to abate it). The Farmer standard is satisfied by a two-part showing: (1) the existence of a serious medical need, and (2) a culpable state of mind—knowledge coupled with inaction or inadequate response.

The Fourth Circuit has further clarified that prolonged delay in treatment, particularly where it results in substantial harm, independently satisfies the deliberate-indifference standard. Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009) (holding that a delay in providing medical care that results in worsening condition or unnecessary pain may constitute deliberate indifference, even absent outright denial of treatment). Delay is not benign where it exacerbates injury; it is constitutionally actionable.

Moreover, failure to follow specialist recommendations or to provide care consistent with known medical directives constitutes actionable indifference, particularly where supervisory personnel are aware of the risk and fail to intervene. Miltier v. Beorn, 896 F.2d 848, 853 (4th Cir. 1990) (holding that supervisory officials may be liable where they tacitly authorize or are deliberately indifferent to subordinates' unconstitutional conduct in failing to provide necessary medical care).

### A.    The Record Establishes Deliberate Indifference Through Documented Knowledge, Contraindicated Treatment, and Continuing Harm

Here, the record affirmatively reflects:

- A documented diagnosis of acute kidney injury (AKI), pyelonephritis, and sepsis at Granville Medical Center prior to any subsequent administration of ketorolac (Toradol), establishing a serious and objectively verifiable medical condition requiring heightened care and contraindication awareness;

- The transmission of those medical records to Bureau of Prisons medical staff, thereby establishing actual knowledge within the custodial system of Mr. Preston's compromised renal function and the associated risks of nephrotoxic medication;

- The repeated administration of ketorolac—a nonsteroidal anti-inflammatory drug expressly contraindicated in the presence of acute kidney injury—on multiple consecutive days by BOP medical personnel, despite that known diagnosis;

- Specialist findings from Duke Nephrology attributing Mr. Preston's renal deterioration to "significant Toradol exposure," thereby establishing a direct causal link between the contraindicated treatment and the resulting injury;

- A continued pattern of exposure to the same custodial medical system and personnel responsible for the initial injury, without meaningful corrective intervention, specialist follow-up, or systemic safeguard to prevent recurrence;

- Ongoing symptoms consistent with renal impairment, including severe flank pain, groin pressure, urinary dysfunction, pressure on abdomen, lower back, groin, and anus, and risk of obstruction or infection, demonstrating that the harm is not historical but continuing;

- A medically and psychologically coercive environment in which Mr. Preston, having experienced harmful treatment, faced the untenable choice between accepting further care from the same actors or refusing treatment at the risk of worsening his condition—conduct later mischaracterized as "noncompliance" rather than recognized as self-protective behavior.

This is not a case of isolated negligence. It is a documented sequence of knowledge, contraindicated action, resulting harm, and continued exposure.

**B. The Falsification and Fabrication of Medical Records Establish an Independent Constitutional and Statutory Violation**

The constitutional violation here does not end with improper treatment. It is compounded—and independently established—by the falsification and distortion of the medical record itself.

The record reflects a falsification/fraud layer that includes:

- A nonexistent anesthesiology evaluation falsely documented as having occurred, despite Mr. Preston never being seen, examined, or consulted by any anesthesiology provider;

- Fabricated or misleading clinical narratives inserted into the medical record that obscure the true sequence of events, including the timing of AKI diagnosis relative to contraindicated medication administration;

- Administrative denials and institutional responses that ratified and repeated those falsehoods, thereby transforming isolated misstatements into an institutionalized record distortion relied upon in judicial proceedings.

This conduct implicates far more than negligence. It strikes at the integrity of the constitutional process itself.

The Supreme Court has made clear that due process is violated where the government permits false or misleading information to infect a judicial determination. Napue v. Illinois, 360 U.S. 264, 269 (1959) (holding that the State may not allow false evidence or misleading impressions to go uncorrected where they bear on the outcome). That principle applies with equal force outside the trial context where liberty and constitutional rights are at stake.

The Fourth Circuit has likewise emphasized that courts possess—and must exercise—inherent authority to address conduct that undermines "the integrity of the judicial process." United States v. Shaffer Equip. Co., 11 F.3d 450, 462 (4th Cir. 1993) (holding that where government misconduct threatens the fairness of proceedings, courts must act to preserve institutional integrity).

The fabrication of medical evaluations, including a false anesthesiology consultation, is not a minor documentation error. It is a material misrepresentation of clinical reality that:

- Creates the false appearance of compliance with federal medical standards, including those governing pre-procedural evaluation under 42 C.F.R. § 482.52;

- Shields unconstitutional conduct from scrutiny by inserting fictitious layers of care that never occurred;

- Misleads reviewing courts into believing that adequate medical processes were followed when, in fact, they were not.

- Such conduct also implicates federal criminal and civil prohibitions on healthcare fraud, including 18 U.S.C. § 1347, which prohibits knowingly executing a scheme to defraud any healthcare benefit program or to obtain money or property by false pretenses in connection with healthcare services. While this Court need not adjudicate criminal liability, it cannot ignore that the elements of fraudulent documentation—false representation, materiality, and reliance—are present on this record.

When false records are used to justify continued confinement, the constitutional injury is compounded: the individual is not merely subjected to harmful treatment but is denied meaningful judicial review because the factual predicate for that review has been corrupted.

**C.      The Combined Pattern Satisfies—and Exceeds—the Constitutional Threshold**

Under Estelle, the failure to provide adequate medical care is unconstitutional where it reflects deliberate indifference. Under Farmer, knowledge of risk combined with failure to act—or worse, continuation of harmful conduct—satisfies the culpability requirement. Under Smith, delay and resulting harm independently trigger constitutional liability. Under Miltier, supervisory awareness without corrective action extends that liability upward through the chain of command.

But even beyond those standards, the addition of falsified medical records and fabricated clinical narratives transforms this case from one of deliberate indifference into one of systemic constitutional breakdown.

This is not merely a failure to treat. This is not merely a delay in care. This is not merely a disagreement over medical judgment.

This is: known medical risk, contraindicated treatment, resulting organ injury, continued exposure to the same actors, and, a record deliberately distorted to conceal that reality.

Taken together, the record does not merely suggest deliberate indifference—it establishes it beyond any reasonable dispute.

The pattern meets—and exceeds—the deliberate-indifference threshold recognized by the Supreme Court and this Circuit. The constitutional violation is not hypothetical, and it is not complete. It is ongoing.

### D.    Constitutional Obligation and Judicial Duty

Where a court is presented with credible evidence that continued confinement subjects an individual to ongoing Eighth Amendment harm—compounded by record falsification that obscures that harm—the Constitution does not permit deferral, minimization, or avoidance.

The obligation is immediate.

Failure to act in the face of such a record does not preserve judicial neutrality—it risks constitutional abdication.

### XI.    THE DISTRICT COURT'S EXPRESS RECOGNITION OF A BIVENS-TYPE CONSTITUTIONAL CLAIM—COUPLED WITH ITS FAILURE TO ACT— ESTABLISHES AN ONGOING, RENEWING CONSTITUTIONAL VIOLATION AND RENDERS CONTINUED CUSTODY UNLAWFUL

This case presents a constitutional contradiction that cannot stand under any coherent application of Supreme Court doctrine: the district court expressly acknowledged that Appellant's allegations are of the type cognizable under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), yet declined to intervene to halt the very constitutional violations giving rise to that recognition.

That failure is not procedural—it is structural.

### A.    Recognition of a Bivens Claim Necessarily Acknowledges Plausible Constitutional Violations

The district court explicitly advised that Appellant's allegations— grossly deficient medical care, deliberate indifference, and resulting physical harm—may be pursued through a Bivens action. (Dkt. 100 at 8; Dkt. 107 at 3). That acknowledgment is legally significant.

A Bivens claim does not arise in a vacuum. It arises only where a plaintiff alleges a violation of a clearly established constitutional right by a federal actor. See Carlson v. Green, 446 U.S. 14, 18–19 (1980) (recognizing Bivens remedy for Eighth Amendment violations involving failure to provide adequate medical care, emphasizing that federal officials may be held liable where their conduct results in injury or death).

Thus, by directing Appellant toward a Bivens remedy, the district court necessarily recognized that: (1) the conduct alleged implicates constitutional magnitude, (2) the actors involved are federal or federally aligned, and (3) the harm alleged is legally cognizable under the Constitution itself.

That recognition cannot be divorced from the court's obligations.

### B.    Article III Courts Have an Affirmative Duty to Halt Ongoing Constitutional

The Supreme Court has made unmistakably clear that courts do not possess discretion to ignore ongoing constitutional injury once it is credibly presented.

"Every judge of every state and federal court is bound by oath to support this Constitution."—Cooper v. Aaron, 358 U.S. 1, 18 (1958)

And critically:

"The federal courts are not reduced to approving the unconstitutional conduct… simply because the remedy is difficult."—Brown v. Board of Education (Brown II), 349 U.S. 294, 299–300 (1955)

Where a constitutional violation is ongoing, judicial inaction is not neutrality—it is acquiescence.

C.     **Each Day of Continued Exposure Constitutes a Renewed Constitutional Injury**

The Supreme Court has long recognized that constitutional violations—particularly under the Eighth Amendment—are not confined to discrete past events. They are continuing injuries.

In Helling v. McKinney, 509 U.S. 25, 33 (1993), the Court held that exposure to conditions posing a future risk of harm itself violates the Constitution. The injury is not limited to past damage; it includes ongoing exposure to danger.

Similarly, Farmer v. Brennan, 511 U.S. 825, 845 (1994), makes clear that deliberate indifference exists where officials: (1) know of a substantial risk, and (2) fail to take reasonable measures to abate it.

Under this framework, each day Appellant remains: (1) under the care of the same actors alleged to have caused his renal injury, (2) without adequate specialist intervention, and (3) subject to continued pain and risk of deterioration, constitutes a fresh constitutional violation.

This is not historical harm. This is renewing harm.

D.     **The District Court's Reliance on § 3553(a) in the Face of Ongoing Constitutional Injury Is Legally Impermissible**

The district court's analytical structure—assuming extraordinary and compelling circumstances, yet denying relief solely under 18 U.S.C. § 3553(a)—cannot be reconciled with constitutional supremacy.

"The Constitution is superior to any ordinary act of the legislature."—Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803) ·

A court cannot: (1) recognize a plausible constitutional violation, (2) acknowledge ongoing harm, (3) and then subordinate that violation to sentencing considerations.

That inversion of hierarchy is precisely what occurred here. Section 3553(a) is a statutory framework. The Eighth Amendment is a constitutional command.

The former cannot override the latter.

**E.      Failure to Act After Recognizing Constitutional Risk Violates the Judicial Oath, Duty of Candor, and Structural Integrity Principles**

The obligations of the judiciary and government counsel are not merely procedural—they are constitutional and ethical.

Under 28 U.S.C. § 453, judges swear to:

> "administer justice without respect to persons, and do equal right to the poor and to the rich."

Under 28 U.S.C. § 530B and ABA Model Rule 3.3, government attorneys are bound by a duty of candor that prohibits allowing courts to operate under materially incomplete or misleading impressions.

And under United States v. Shaffer Equipment Co., 11 F.3d 450, 457–58 (4th Cir. 1993), courts must act where misconduct or omission threatens:

> "the integrity of the judicial process."

Here, the convergence is undeniable: (1) acknowledged constitutional claims (via Bivens reference), (2) ongoing exposure to harm, (3) alleged record omissions and distortions, and (4) continued confinement under the same actors. Failure to intervene in that posture is not a discretionary lapse—it is a structural failure.

**F.      Continued Confinement Under These Conditions Constitutes an Unlawful Term of Imprisonment**

At its core, this case asks a simple but profound question:

Can a person be lawfully confined under conditions that plausibly violate the Constitution—after a federal court has recognized the viability of those violations?

The answer, under the Constitution, is no.

When confinement itself becomes the vehicle of constitutional injury, it ceases to be lawful punishment and becomes unconstitutional custody.

See Preiser v. Rodriguez, 411 U.S. 475, 484 (1973) (recognizing that challenges to the fact or duration of confinement lie at the core of constitutional protection).

Appellant's continued imprisonment: (1) in the presence of alleged abusers, (2) without constitutionally adequate care, (3) and under conditions producing ongoing harm is not merely harsh—it is unlawful.

### G.    This Structural Breakdown Necessitates En Banc Intervention

This is not an error confined to one case.

If allowed to stand, the decision below would establish a dangerous precedent: (1) that courts may acknowledge constitutional violations, (2) decline to remedy them, and (3) defer to statutory sentencing factors instead.

That result would undermine: (1) the supremacy of the Constitution, (2) the role of Article III courts, and (3) the foundational principle that no person may be subjected to unconstitutional punishment.

Under Fed. R. App. P. 35(a)(2), this case presents a question of exceptional importance warranting en banc review.

And not just review—correction.

### XII.    THE "REFUSAL OF CARE" NARRATIVE IS FACTUALLY INACCURATE, LEGALLY IRRELEVANT, AND CONSTITUTIONALLY MISLEADING

The Government's reliance—and the district court's adoption—of a "refusal of care" narrative represents a material mischaracterization of the record that distorts causation, improperly shifts constitutional responsibility, and undermines the integrity of the adjudicative process.

Properly understood, the record reflects the opposite.

Mr. Preston did not refuse care before injury. He sought care. He relied on the custodial medical system. He was injured by that system.

Only *after* repeated administration of contraindicated medication, documented renal injury, and evidence of falsified or misleading medical documentation did Mr. Preston [reasonably] begin to refuse further treatment from the same custodial actors responsible

for that harm. (Emphasis added).

That distinction is constitutionally dispositive.

In Farmer v. Brennan, the Supreme Court held that the duty to protect arises when officials become aware of a substantial risk of serious harm. 511 U.S. at 837. That duty attaches before any refusal and cannot be extinguished by the prisoner's subsequent response to that harm.

Moreover, the Supreme Court in Washington v. Harper recognized that inmates retain a significant liberty interest in avoiding unwanted or harmful medical treatment. 494 U.S. 210, 221–22 (1990). That interest is rooted in the fundamental right to bodily integrity.

Thus, Mr. Preston's refusal was not noncompliance. It was constitutionally protected self-protection.

The district court's reliance on refusal improperly shifted causation and distorted the § 3553(a) analysis. It allowed the State to create risk, inflict harm, and then rely on the prisoner's refusal to accept further exposure to that harm as a basis to deny relief.

The Constitution does not permit such inversion.

### XIII.    RELIEF MUST BE IMMEDIATE BECAUSE UNCONSTITUTIONAL CUSTODY CANNOT CONTINUE

The Constitution is not advisory. It is controlling.

In Marbury v. Madison, the Supreme Court held that laws repugnant to the Constitution are void and that courts have a duty to enforce constitutional limits. 5 U.S. at 177.

In Preiser v. Rodriguez, the Court held that where a prisoner challenges the legality of custody, the appropriate remedy is immediate or speedier release. 411 U.S. 475, 484 (1973).

Here, confinement itself has become the mechanism of harm. Continued custody under these conditions is not merely harsh—it is unconstitutional.

Where constitutional violations are ongoing, delay is itself a violation. Farmer, 511 U.S. at 845.

### XIV.    FAILURE TO ACT WOULD UNDERMINE THE STRUCTURAL ROLE OF THE JUDICIARY

The judiciary's role is not to observe constitutional violations—it is to correct them.

In Cooper v. Aaron, the Supreme Court held that every judge is

bound by oath to enforce the Constitution. 358 U.S. 1, 18 (1958). That obligation is immediate and non-discretionary.

Allowing this decision to stand would establish that courts may acknowledge constitutional harm yet decline to remedy it. That result would erode the supremacy of the Constitution and the legitimacy of judicial review.

### XVI.    EN BANC REVIEW IS NECESSARY AND CORRECTION IS REQUIRED

This case presents exceptional importance because it implicates: (1) Ongoing Eighth Amendment violations, (2) Independent Fourth and Fifth Amendment violations, (3) Structural defects in the adjudicative process, (4) the proper relationship between constitutional mandates and statutory sentencing

The error is not isolated. It is systemic. En banc review is necessary to restore doctrinal coherence and ensure that constitutional rights remain enforceable.

## XVII.    CONCLUSION

For the foregoing reasons, this Court should: (1) Grant rehearing and rehearing en banc; (2) Vacate the panel decision; (3) Hold that continued confinement under the present conditions violates the Constitution; (4) Remand with instructions to grant immediate relief; and (5) Grant any further relief deemed just and proper.

The record establishes the violation. The Constitution governs the outcome. And where the Constitution governs, judicial action is not optional—it is required.

### XVIII.    DECLARATION UNDER 28 U.S.C. § 1746

I, Pierre Rashad Preston, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief. I am a pro se litigant, my pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L.Ed.2d 1081 (2007).

Executed and attested on April 13, 2026, by:

_____    Pierre Rashad Preston (Reg. No. 54173-509),

FPC Butner, NC 27509, P.O. Box 1000,

Butner, NC 27509

Page 2 of 2

## CERTIFICATE OF SERVICE
### Case No. 25-6935

The undersigned, PIERRE RASHAD PRESTON, certifies his "PETITION FOR REHEARING AND REHEARING EN BANC (pursuant to Fed. R. App. P. 35 and 40)" was on this 13th day of **April, 2026,** sent to the Clerk of Court United States Court of Appeals for the Fourth Circuit at the addresses listed below by U.S.P.S. Mail (in properly addressed envelope with U.S.P.S. postage duly paid), physically handing this package to a Bureau of Prisons (BOP) correctional officer–thereby invoking the Prison Mailbox Rule as being timey served as of this date, to:


# Clerk of Court
# United States Court of Appeals for the Fourth Circuit
# 1100 East Main Street,
# Suite 501
# Richmond, VA 23219


## DECLARATION

I declare the foregoing details to be true and correct to the best of my understanding having personal knowledge of the particulars and events presented herein under the penalty of perjury. 28 U.S.C. § 1746. Respectfully submitted without malice for the relief requested on this 13th day of April, 2026, by:


Pierre Rashad Preston
Reg. No. 54173-509
Federal Prison Camp (FPC) Butner
P.O. Box 1000
Butner, NC 27509

Pierre Rashad Preston
4907 Parrish Branch Rd.
Midlothian, Va. 23112

Clerk of
United S
    for t

1100 E
Suite S
Richmm

   

RECEIVED
U.S. MARSHAL

Court

States Court of Appeals

he Fourth Circuit

ast Main Street

501

l . Va.   23219